UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Yagman v. General Motors Co., 14-CV-9058*
------------------------------------------------------------------------x

14-MD-2543 (JMF)

OPINION AND ORDER AND
SUGGESTION OF REMAND

JESSE M. FURMAN, United States District Judge:

In 2014, Stephen Yagman, a disbarred lawyer, filed a *pro se* putative class action in California federal court against General Motors LLC ("New GM") alleging that the engine of his car, a 2007 Buick Lucerne, had "stopped running when it was in motion." ECF No. 24 ("FAC"), ¶ 6.[1] To his chagrin, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the case to this Court as part of the large and complex multidistrict litigation ("MDL") proceedings arising out of the recalls beginning in February 2014 of General Motors vehicles that had been manufactured with a defective ignition switch and other defects. In the years that followed, Yagman repeatedly made his displeasure known, moving over and over again to remand his case to the court from which it has been transferred. The Court denied those motions, explaining that Yagman could renew his request if or when a class was certified and he opted out of it (or it was determined that he was not a member of the class). In 2020, the Court finally certified a class as part of a settlement of all economic loss claims brought against New GM. Inexplicably, however, Yagman did not opt out in accordance with the simple procedures established by the Court. Nevertheless, after the Court granted final approval to the settlement, and dismissed

---

[1]   Unless otherwise noted, all docket references are to 14-CV-9058.

Yagman's claims with prejudice, Yagman made yet another motion to remand, arguing that he is not a member of the settlement class and, if he is, he opted out.

The Court emphatically rejects the premises of Yagman's motion. His repeated complaints notwithstanding, his case was properly before this Court as part of the MDL. And he was unambiguously a member of the settlement class. It is tempting, therefore, to say that he is out of luck, bound by the class settlement (and its release) due to his failure to opt out in accordance with the clear procedures established by this Court. For the reasons that follow, however, the Court concludes that the law in this Circuit is more forgiving and that written evidence of a "reasonable indication" of an intent to opt out suffices. And the Court finds that at least one filing that Yagman made following preliminary certification of the settlement class satisfies that lax standard. Accordingly, the Court grants Yagman's motion, vacates the dismissal of his complaint, and suggests to the JPML that his case be remanded.

## BACKGROUND

Yagman filed his initial complaint — on behalf of himself and a putative class — in the United States District Court for the Central District of California on June 18, 2014. ECF No. 1. After the initial complaint was dismissed for failure to state a claim, *see Yagman v. Gen. Motors Co.*, No. 14-CV-4696 (MWF) (AGRx), 2014 WL 12562853 (C.D. Cal. July 3, 2014) (ECF No. 10); *Yagman v. Gen. Motors Co.*, No. 14-CV-4696 (MWF) (AGRx), 2014 WL 4177295 (C.D. Cal. Aug. 22, 2014) (ECF No. 23), Yagman filed a First Amended Complaint on August 22, 2014. In it, Yagman alleged that he was the owner of a 2007 Buick Lucerne, which "had defects that remained latent until 2014" — specifically, the car's "engine stopped running when it was in motion and [he] was operating it and there was a complete shutdown of its electrical system." FAC ¶¶ 5-6. Yagman professed his "belie[f]" that the defects were located in the "electronic

control module," the "secondary air valve," the "coolant sensor," and "other parts presently unknown" — "none of which," he asserted, was "related to the car's ignition switch." *Id.* ¶ 6. He alleged claims for breach of the warranties of merchantability and of fitness, *id.* ¶¶ 16-17, fraud and mail fraud, *id.* ¶¶ 18-24, bankruptcy fraud, *id.* ¶ 67, civil RICO violations, *id.* ¶¶ 42-66, and intentional and negligent infliction of emotional distress, *id.* ¶¶ 25-28. He also sought to certify a class of "persons who own Buick Lucerne model years 2006 to 2011." *Id.* ¶ 68.

In the meantime, the JPML entered a conditional transfer order directing that Yagman's case be transferred to this Court as part of the GM Ignition Switch MDL. *See* Conditional Transfer Order (CTO-8), *In re Gen. Motors LLC Ignition Switch Litig.*, MDL No. 2543 (J.P.M.L. July 21, 2014) (ECF No. 352). Yagman objected and moved to vacate the conditional transfer, arguing "that he does not specifically allege an ignition switch defect, but rather claims defects in the electronic control module, the secondary air valve, the coolant sensor, and 'other parts presently unknown.'" *In re Gen. Motors LLC Ignition Switch Litig.*, MDL No. 2543, 2014 WL 5597269 at *1 (J.P.M.L Oct. 22, 2014) (14-CV-9058, ECF No. 39). The JPML rejected that argument, explaining that the defects alleged by Yagman "appear[ed] to manifest themselves similarly to the ignition switch defect, *i.e.*., [sic] the engine stops running while the car is being operated and there is a shut down of the electrical system. We are persuaded that transfer will result in efficiencies." *Id.* Accordingly, on November 13, 2014, the case was transferred to this Court and accepted as related to the MDL. ECF No. 41.

On December 18, 2014, this Court issued MDL Order No. 29, which affirmed that the consolidated class action complaints filed by Lead Counsel were the operative complaints for all economic loss claims and dismissed Yagman's complaint (among others). 14-MD-2543, ECF No. 477 ("MDL Order No. 29"), at 2-4, ex. A at 6. MDL Order No. 29 explained that "[i]f any

plaintiff whose claims are dismissed pursuant to this [Order] objects to dismissal of his or her allegations, claims, or any defendant(s) not named in the Consolidated Complaints, then such plaintiff may seek leave with the Court to reinstate his or her allegations or claims or the addition of such dismissed defendant(s) upon a showing of good cause within 14 days." *Id.* at 3. Yagman did not seek such relief. On April 24, 2015, MDL Order No. 50 modified and superseded MDL Order No. 29, but reaffirmed that "[w]ith respect to complaints filed in or transferred to this MDL before December 18, 2014" — including Yagman's — "allegations, claims, and defendant(s) not included in the Consolidated Complaints, as well as the complaints of plaintiffs not named in the Consolidated Complaints, were dismissed without prejudice effective December 18, 2014." ECF No. 96 ("MDL Order No. 50"), ¶ 6. "The time to object to that dismissal without prejudice of the cases identified on Order No. 29, Exhibit A having passed," the Court continued, "all of those complaints . . . remain dismissed." *Id.*

MDL Order No. 50 clarified that, "unless and until the Court orders otherwise," all such "dismissals are . . . without prejudice" and that "dismissal of . . . individual complaints in order to streamline these proceedings does not preclude such plaintiffs from (a) recovering as a member of any class that might be certified or (b) pursuing claims, should a plaintiff choose to do so, if no class is certified *or if the plaintiff opts out of a class that is certified*." *Id.* at 1-2 (emphasis added); *see also id.* ¶ 3 ("The provisions of this Order do not extinguish the claims of individual plaintiffs in the event class certification is denied, or the presentation of claims by individual plaintiffs *who exclude themselves from any class that is certified, under procedures to be prescribed by the Court . . . .*" (emphasis added)). In an accompanying Opinion and Order, the Court reiterated that MDL Order No. 50 "makes clear that the Consolidated Complaints (and the anticipated amended Consolidated Complaints) are legally operative — that is, that they are

4

intended to be superseding rather than administrative.  Additionally, in the interests of efficiency and certainty, Order No. 50 reaffirms that any complaint or claim that was previously dismissed and not reinstated pursuant to the procedure set forth in Order No. 29 remains dismissed." *In re Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF), 2015 WL 3619584, at *10 (S.D.N.Y. June 10, 2015) (ECF No. 108) (citation omitted).

Given the size and complexity of the litigation (the final operative consolidated class action complaint alone was 1,696 pages in length and included 7,479 paragraphs, 14-MD-2543, ECF No. 4838), the litigation progressed slowly but surely, with a staggering amount of discovery and multiple rounds of complex motion practice.  Meanwhile, nothing of note happened in Yagman's member case until July 6, 2018, when he filed a letter identifying himself as a "Non-Ignition Switch Plaintiff" within the meaning of MDL Order No. 153 (a case management order, the details of which are not otherwise relevant here) and "request[ed] that his action be transferred back to the U.S. District Court for the Central District of California."  ECF No. 256.  The Court denied Yagman's request as premature, ECF No. 259, and did the same when Yagman renewed his motion several times thereafter, *see* ECF Nos. 263, 264, 270, 271.  Yagman renewed his motion yet again on February 22, 2019.  ECF No. 274.  New GM opposed the motion on the ground that Yagman's complaint had been dismissed pursuant to MDL Order Nos. 29 and 50 and that the deadline to object to that dismissal — and the procedures for reinstatement of his claims — had passed long ago.  *See* ECF No. 277.  The Court denied the motion "substantially for the reasons laid out in New GM's memorandum in opposition."  ECF No. 281.  Undeterred, Yagman tried again on August 29, 2019, ECF No. 287, again without success, ECF No. 288.

Yagman then tried a different tack, purporting to file a Second Amended Complaint on October 4, 2019.  ECF No. 291.  The Court did not permit him to do so.  Among other things, the Court explained that the Second Amended Complaint — which was "nearly identical to" the First Amended Complaint — was "a nullity and [would] be disregarded, as [Yagman's] complaint was dismissed nearly five years ago and remains dismissed."  *Yagman v. Gen. Motors Co.* (*In re Gen. Motors LLC Ignition Switch Litig.*), Nos. 14-MD-2543 (JMF), 14-CV-9058 (JMF), 2019 U.S. Dist. LEXIS 198877, at *144 (S.D.N.Y. Nov. 15, 2019) (ECF No. 300).  "To the extent that his filing can be deemed a motion for reconsideration of the MDL Order Nos. 29 and 50," the Court noted, it was both meritless and "filed almost five years too late."  *Id.* at *144-45.  The Court went on to explain that, "[a]s provided in Order No. 50, should a class be certified of which he is a member, Mr. Yagman may recover as a member of that class or he may opt out of the class and re-file his complaint at that time."  *Id.* at *145.

Not long after, New GM and Lead Counsel reached agreement on a class-based settlement of all economic loss claims.  On April 27, 2020, the Court preliminarily approved their settlement, ordering notice to members of the class and establishing deadlines and procedures for opting out of the class.  ECF No. 313 ("Preliminary Approval Order") (supplemented at ECF No. 316).  Approximately one hour later, Yagman filed another motion to remand.  ECF No. 314.  In setting a briefing schedule for his motion, the Court directed the parties to "address whether Mr. Yagman is a putative member of the proposed settlement class and, if so, whether this motion should be denied without prejudice to renewal *in the event that he opts out of the class in accordance with the Court's order granting preliminary approval to the settlement* and/or after final approval."  ECF No. 315, at 2 (emphasis added).  In his reply filed on May 7, 2020, Yagman wrote: "It is clear that [Yagman] should not be deemed a member of

the economic-loss-only class of plaintiffs, because he clearly has indicated and expressed his intention not to be a member of that class. . . . [He] is *not* a member, and never will be a member, of a putative proposed settlement class . . . . [He] never would agree to be a member of any class and never would agree to any class settlement." ECF No. 319 ("Pl.'s May 7, 2020 Reply"), at 3 (internal quotation marks and ellipsis omitted). On July 21, 2020, the Court denied Yagman's motion "substantially for the same reasons that the Court denied his prior motions" and reiterated that he "remains subject to Order Nos. 29 and 50, which allow a plaintiff to independently pursue economic loss claims *only if no class is certified or if the plaintiff opts out of a certified class*." ECF No. 324 (emphasis added).

The order granting preliminary approval of the class settlement — which was entered on both the MDL docket and Yagman's individual member docket — provided that "all [p]ersons who request to become Opt-Outs must do so by mailing a written, hand-signed request to the Class Action Settlement Administrator," postmarked "no later than **October 19, 2020**," providing certain specified information. Preliminary Approval Order ¶ 26. Yagman failed to do so. ECF No. 342-1, ¶ 15. On December 18, 2020, following a fairness hearing, the Court granted final approval of the class settlement (the "Class Settlement"). *In re Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF), 2020 WL 7480323 (S.D.N.Y. Dec. 18, 2020) (ECF No. 327). The Amended Settlement Agreement included a general release by all class members in consideration for the settlement, pursuant to which the class agreed to release any potential claims arising from or related to the economic loss cases brought in the MDL, with a carve-out solely for "personal injury, wrongful death or actual physical property damage arising from an accident involving a Subject Vehicle." 14-MD-243, ECF No. 7888-1, ¶¶ 31, 121-22. Accordingly, the final judgment granting approval of the class

settlement dismissed with prejudice the claims of all class members, explicitly identifying Yagman's individual case. *In re Gen. Motors LLC Ignition Switch Litig.*, 2020 WL 7480323, at *6, 10.

The very next day, Yagman filed another motion to remand, ECF No. 328, which the Court denied without prejudice pending the adoption of procedures governing next steps in the MDL following final approval of the class settlement, ECF No. 333. Thereafter, the Court denied without prejudice yet another motion to remand filed prematurely. ECF Nos. 337, 339. On January 8, 2021, the Court entered MDL Order No. 174, which noted that "Mr. Yagman's name does not appear on the list of opt-outs determined to be valid in the Final Order and Final Judgment" and therefore directed him to "address whether and how he timely and validly opted out of the Class Settlement" in any renewed motion to remand. ECF No. 338, at 3. Yagman filed his present motion on January 24, 2021. ECF No. 341 ("Pl.'s Mem."). Yagman argues, as he did before the JPML in 2014, that his claims never belonged in this MDL in the first place; that he is not a member of the settlement class; and that his case should therefore be remanded back to the Central District of California. New GM counters that Yagman is indeed a member of the settlement class; that he failed to opt out; and, thus, that he released his claims. On that basis, and that basis alone, New GM opposes Yagman's motion for remand.

## DISCUSSION

The premises of Yagman's motion — that his case was improperly transferred to this Court and that he is not a member of the settlement class — are borderline frivolous. As the JPML observed seven years ago, despite Yagman's claim that the defects he alleges do not stem from an ignition switch, the defective behavior he alleges that his vehicle experienced — "*i.e.,* the engine stops running while the car is being operated and there is a shut down of the electrical

8

system" — is, in fact, consistent with an ignition switch defect. *In re Gen. Motors LLC Ignition Switch Litig.*, 2014 WL 5597269, at *1. And, in any event, the JPML long ago "expanded the scope of actions transferred to this MDL to encompass personal injury and wrongful death claims, as well as economic loss claims based on both ignition switch defects and other alleged defects, on the theory that 'there will be discovery that is common to the MDL and to' such actions." *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 3619584, at *1 (citation omitted). That this case was properly transferred to this Court is thus beyond dispute.

Yagman's contention that he "is not a proper class member . . . and he need not have opted out of" the settlement is similarly meritless. Pl.'s Mem. 4. The preliminary approval order defined the class as "[a]ll persons who, at any time as of or before the Recall Announcement Date of the Recall(s) applicable to the Subject Vehicle, own(ed), purchase(d), and/or lease(d) a Subject Vehicle." Preliminary Approval Order ¶ 4. "Subject Vehicle" was defined, in turn, to encompass "Recall 14v355 Vehicles," including "2006-2011 Buick Lucerne vehicles." 14-MD-2543, ECF No. 7815 ¶ 70(f); *accord* 14-MD-2543, ECF No. 7888-1 ¶ 78(f) (same in Amended Settlement Agreement); *see* Preliminary Approval Order 1 n.1 (incorporating by reference terms defined in the Settlement Agreement). Yagman, of course, alleges that he "is an owner of a 2007 Buick Lucerne." FAC ¶ 5.[2] Thus, Yagman's insistence that he is not, and never was, a class member is belied by the very provisions of the preliminary approval order that he quotes in his brief. *See* Pl.'s Mem. 2. To the extent Yagman had any confusion on this point, New GM's repeated explanation that he was a member of the settlement class in their briefs opposing his

---

[2]   Notably, Yagman's First Amended Complaint sought to certify a class of "persons who own Buick Lucerne model years 2006 to 2011," i.e., the precise range encompassed by the Settlement Agreement. *Id.* ¶ 68.

9

serial motions to remand should have cured it. *See, e.g.*, ECF No. 277, at 3; ECF No. 295, at 1 & n.1, 3; ECF No. 318, at 4-5; ECF No. 342 ("Def.'s Opp'n"), at 2-3, 6-7 (citing filings and notices that put Yagman on notice of his class membership). In short, Yagman's claim that he "never was on the class bus in the first place" is flat wrong. Pl.'s Mem. 3. He was not only on the "bus"; he was repeatedly told that he was and about what he should do to get off.

Notably, while Yagman uses his reply to level inflammatory and wholly inappropriate personal attacks on New GM's attorneys and declarant, ECF No. 346, at 1-4, 6-8, and accuses them of "intentionally ma[king] sure that [he] would not receive any opt-out notice," *id.* at 6,[3] the reality is that he, by virtue of his position as a *pro se* litigant who was prosecuting his case independently, almost certainly received *far more* notice of the Class Settlement and his need to opt out than virtually any other potential class member, which encompassed more than 15.5 million unique vehicles and even more individuals. 14-MD-2543, ECF No. 8241, at 1. As a former attorney, ECF No. 53; Def.'s Opp'n 2, 13 n.14, Yagman is not a typical *pro se* litigant, *see Cornelio v. Connecticut*, 708 F. App'x 41, 42 (2d Cir. 2018) (summary order) (explaining that the *pro se* plaintiff was "not entitled to special solicitude because he is a former attorney" (citing *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010))). Moreover, he has

---

[3] Yagman's reply was not his first inappropriate and intemperate filing in this litigation. *See, e.g.*, Pl.'s May 7, 2020 Reply 2 (noting his desire to be "granted his freedom from this cursed, multi-party litigation cluster-****" (asterisks in original)). Yagman is cautioned that such filings in the future could result in the imposition of sanctions, *see, e.g.*, *Koehl v. Bernstein*, 740 F.3d 860, 863 (2d Cir. 2014) (per curiam) (affirming sanctions imposed on *pro se* party for the use of "offensive, abusive, and insulting language"), particularly given that he has already been sanctioned for similar conduct, *see, e.g.*, *Thomas v. Baca*, No. 06-CV-6981 (DDP) (SHX), 2007 WL 738545, at *8-11 (C.D. Cal. Feb. 28, 2007) (sanctioning Yagman for "unnecessarily dragging [opposing counsel's] reputation through the mud by filing a public document" containing reckless allegations), *aff'd,* 308 F. App'x 87 (9th Cir. 2009) (unpublished).

had access to the Court's electronic case filing ("ECF") system for both the 14-MD-2543 and 14-CV-9058 dockets since April 30, 2015.  ECF No. 100.  As part of his application for that access, Yagman affirmed that he "ha[s] regular access to . . . an e-mail account (on a daily basis) to receive notifications from the Court and notices from the e-filing system" and acknowledged that he "underst[ood] that [he] must regularly review the docket sheet of the case so that [he would] not miss a filing."  *Id.* at 1-2.  Yagman's practice of making responsive filings within hours of relevant Court orders or New GM filings appearing on the docket makes abundantly clear that he has in fact been monitoring the litigation.  *See, e.g.*, ECF Nos. 314, 337, 346.  Thus, he knew full well (or should have known) what he needed to do to opt out of the settlement class.

Given the foregoing, it is tempting to hold that Yagman is out of luck — that, having failed to opt out of the settlement class pursuant to the clear and relatively simple procedures established by the Court, he is bound by its terms, including the release of his claims.  But it turns out that the law in this Circuit is more forgiving and leads the Court to conclude that Yagman did, in fact, opt out of the class.  "If there is a dispute about whether a class member has followed the appropriate opt-out procedures" for opting out of a class action, "the sparse case law on the issue suggests, and the practicalities of class action administration require, that the burden be on the class member to establish that he or she made a sufficient effort to communicate an intent to opt out through the appropriate channels" and "that notice [of such intent] was effectively and timely communicated."  *In re WorldCom, Inc. Sec. Litig.*, No. 02-CV-3288 (DLC), 2005 WL 1048073, at *4 (S.D.N.Y. May 5, 2005).  Critically, "[b]ecause flexibility in making this determination is appropriate, 'any written evidence' containing a 'reasonable indication of a desire to opt out ought to be sufficient.'"  *Id.* (quoting *Arthur Andersen & Co. v. Bank of Am. (In re Four Seasons Sec. L. Litig.)*, 493 F.2d 1288, 1291 (10th Cir. 1974)); *accord*

11

*In re Sunedison, Inc. Sec. Litig.*, No. 16-MD-2742 (PKC), 2018 WL 2356663, at *3 (S.D.N.Y. May 1, 2018); *see also Plummer v. Chem. Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982) ("Any reasonable indication of a desire to opt out should suffice.").[4]  Yagman's May 7, 2020 filing — in which he stated unambiguously that he would "never . . . be a member, of a putative proposed settlement class" and "never would agree to be a member of any class and never would agree to any class settlement," Pl.'s May 7, 2020 Reply 3 (internal quotation marks and ellipsis omitted) — meets that standard.

It is true, as New GM points out, *see* Def.'s Opp'n 11-13, that "pursuing an individual action or arbitration does not constitute notice of an election to opt out of a class action," *In re WorldCom*, 2005 WL 1048073, at *3; *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 370 (S.D.N.Y.) ("It is well-established that pendency of an individual action does not excuse a class member from filing a valid request for exclusion." (internal quotation marks omitted)), *aff'd,* 107 F.3d 3 (2d Cir. 1996) (unpublished table decision).  But the Court's conclusion does not rest on Yagman's dogged efforts to prosecute his independent action; instead, it rests on his May 7, 2020 submission, which was made *after* the Class Settlement had

---

[4]   Notably, in a decision filed only last month, the Seventh Circuit rejected the "reasonable indication" standard where, as here, a district court had issued clear instructions about how to opt out and a class member had failed to follow them.  *In re Navistar MaxxForce Engines Mktg., Sales Practices, & Prod. Liab. Litig.*, 990 F.3d 1048, 1052-53 (7th Cir. 2021).  In such circumstances, the court held, a district court need not accept "some different means" of opting out.  *Id.* at 1052.  Among other things, the court explained, "the 'reasonable indication' approach could make class actions difficult if not impossible to administer.  Classes may have thousands, even millions, of members.  A clear rule established in [a court order] can be implemented mechanically by a claims administrator.  A 'reasonable indication' approach, by contrast, could pose dozens or hundreds of difficult questions for a judge." *Id.* at 1053.  There is considerable force to that reasoning and if the Court were writing on a blank slate it might well adopt the Seventh Circuit's approach.  But the weight of authority in this Circuit supports the "reasonable indication" standard and, thus, it would arguably be unfair to Yagman to deviate from that standard here, without clear prior notice.

been preliminarily approved and was no longer hypothetical.  *See* Pl.'s May 7, 2020 Reply 3; Preliminary Approval Order.  That his statements were made "in direct response to the Court's directive that the parties address th[e] class membership issue" does not mean that they "do not reflect an intent to opt out," as New GM argues.  Def.'s Opp'n 12.  Nor does it matter that Yagman continued to insist — erroneously — that his case was improperly transferred to the MDL and that he was not a member of the proposed class.  His declaration that he "*never* would agree to be a member of any class and *never* would agree to any class settlement" may have been in the alternative.  Pl.'s May 7, 2020 Reply 3 (emphasis added).  But it was nevertheless an unambiguous "indication of [his] desire to opt out."  *In re WorldCom*, 2005 WL 1048073, at *4 (internal quotation marks omitted); *see, e.g.*, *Gortat v. Capala Bros.,* No. 07-CV-3629 (ILG) (SMG), 2011 WL 6945186, at *12 (E.D.N.Y. Dec. 30, 2011) (finding that a plaintiff "provide[d] a reasonable indication of [his] desire to be excluded from the class" via a notarized letter stating "I don't want to be part of the group that are suing [the defendants]").

*Seacor Holdings, Inc. v. Mason* (*In re Deepwater Horizon*), 819 F.3d 190 (5th Cir. 2016), on which New GM relies, Def.'s Opp'n 12-13, is thus distinguishable from this case.  There, the Fifth Circuit affirmed the district court's determination that a plaintiff's motion to sever his claims from a complex MDL constituted only "an after-the-fact attempt to depict completely distinct litigation conduct in another sphere as expressing a desire to opt out" rather than "an informal but unequivocal expression of a desire to opt out."  *Deepwater Horizon*, 819 F.3d at 197.  In doing so, the Fifth Circuit noted that the plaintiff's attorney had not discussed the need to opt out with the client; that the client had not signed the motion to sever (as would have been required for an effective opt-out); and that "the motion to sever itself was not 'unequivocal' in evincing a desire to opt out, particularly in the event that it was denied."  *Id.*  Here, by contrast,

Yagman's statements — in a document he personally signed and filed after the Court preliminarily approved the Class Settlement — that he would never agree to any class settlement indicated an unmistakable manifestation of his desire not to be part of the Class Settlement. His present position, therefore, cannot be dismissed as "an after-the-fact attempt to depict completely distinct litigation conduct in another sphere as expressing a desire to opt out." *Id.*

## CONCLUSION

For the foregoing reasons, the Court concludes that Yagman did, in fact, opt out of the Class Settlement. It follows that his claims were not, in fact, subject to the release and that his complaint was improperly dismissed. Accordingly, the Court vacates that dismissal and reinstates his First Amended Complaint, ECF No. 24 (except that the class allegations in Paragraphs 68 to 78 are stricken given the Class Settlement approved by the Court). That disposes of New GM's sole argument against Yagman's remand motion. Accordingly, and because there is no good reason to maintain this action here given the settlement and the fact that the MDL proceedings have all but concluded, Yagman's motion for an order suggesting that the JPML remand his case to the United States District Court for the Central District of California is GRANTED. *See Mem'l Hermann Healthcare Sys. v. State St. Bank & Tr. Co.* (*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*), Nos. 08-CV-5440 (RJH), 08-CV-5442 (RJH), 2011 WL 1046162, at *4 (S.D.N.Y. Mar. 22, 2011) (explaining that in determining whether to issue a suggestion of remand to the JPML, courts consider whether "pretrial proceedings have run their course," "whether the case will benefit from further coordinated proceedings as part of the MDL," and whether "remand will best serve the expeditious disposition of the litigation" (internal quotation marks omitted)).

Finally, the Court approves the limited redactions New GM included in its papers pertaining to this motion on a permanent basis substantially for the reasons stated therein. *See* Def.'s Opp'n 5 n.2.

**The Clerk of Court is directed to terminate 14-CV-9058, ECF No. 341; to re-open 14-CV-9058; and to send a copy of this Opinion and Order to the Judicial Panel on Multidistrict Litigation.**

SO ORDERED.

Dated: April 20, 2021
New York, New York

_____
JESSE M. FURMAN
United States District Judge